UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
GREGORY A. LEWIS AND BRITANNICA        :        15cv2676 (DLC)
CAPITAL PARTNERS, LLC,                 :
                                       :        OPINION AND ORDER
                    Plaintiffs,        :
                                       :
          -v-                          :
                                       :
MALGORZATA MADEJ, KINGSLEY VENTURES    :
CORP. AND SANJAY GUPTA,                :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X

APPEARANCES:

For the plaintiff:
Jeffrey Sonnabend
Sonnabend Law
600 Prospect Avenue
Brooklyn, NY 11215

For the defendant Kingsley Ventures Corp.:
Amy J. Everhart
Everhart Law Firm
1400 Fifth Avenue North
Nashville, TN 37208

DENISE COTE, District Judge:

     This dispute arises out of an alleged trademark

infringement.  Gregory Lewis ("Lewis") and Britannica Capital

Partners, LLC ("Britannica") allege that Malgorzata Madej

("Madej"), Sanjay Gupta ("Gupta"), and Kingsley Ventures Corp.

("Kingsley") fraudulently and intentionally blocked the

plaintiffs from using the name "Britannica" and related

trademarks.[1]  They seek a declaration that Kingsley's trademarks
are invalid and that its registered trademarks with the Patent
and Trademark Office ("PTO") should be cancelled.  The
plaintiffs also seek money damages under both federal and state
causes of action.  The plaintiffs have not been able to locate
either Madej or Gupta to effect service on them.  Plaintiffs
assert, however, that they served Kingsley on July 29, 2015.

Kingsley has moved to dismiss the action by arguing that
there is no personal jurisdiction over it in New York, that
service was flawed, and that venue is improper.  For the reasons
that follow, Kingsley's September 18, 2015 motion to dismiss is
denied.  Kingsley will be required to assist the plaintiffs in
serving Madej and Gupta.

## Background

The following facts are taken from the complaint and
documents integral to those claims.  Lewis is a resident of New
York and Britannica is an LLC organized in New York.  In
December 2011, Lewis began licensing and other preparatory
actions necessary for providing investment and consulting
services under the mark "Britannica Capital Partners LLC" and/or

---

[1] There is an ongoing proceeding related to this dispute before
the Trademark Trial and Appeal Board ("TTAB").  The TTAB
proceeding has been stayed pending the outcome of this
litigation.

"Britannica Capital."  In preparing to do business as
Britannica, plaintiffs registered with the Financial Industry
Regulatory Authority ("FINRA").  FINRA is responsible for
certifying and registering every financial services firm in the
United States and has a record of the name of every financial
firm.  On January 24, 2012, plaintiffs requested that FINRA
check the availability of the name "Britannica Capital Partners
LLC."  On February 9, FINRA confirmed that the name was
available for registration, meaning that no other firm was
registered with a name that would be confusingly similar to
Britannica.  Given FINRA's authoritative registry, FINRA's
confirmation of the availability of the name Britannica
established that Kingsley was not operating under that name.
Lewis began contacting prior clients to inform them that he
would be operating as Britannica Capital Partners LLC.

In March 2012, Lewis established Britannica as a New York
LLC and has been providing investment related services under the
Britannica name since then.  Plaintiffs applied with the PTO to
register the mark "Britannica," but the application was not
accepted because Kingsley had already filed an application with
a similar name.  Plaintiffs surmise that the defendants learned
of the plaintiffs' earlier registration with FINRA and have
intentionally frustrated the plaintiffs' ability to register the

Britannica mark by filing their own applications with the PTO under similar names.

Plaintiffs allege many specific facts to support their accusations.  For example, Gupta signed Kingsley's trademark application to the PTO for the name "Britannica" on February 12, 2012.  The application claimed a date of first use of February 12, 2012, the same day the application was filed.  Two weeks later, the defendants began operating a website -- www.britannicacapital.com -- to advertise investment related services.  The defendants' website stated that it was "founded in 2012."

After receiving a cease and desist letter from counsel for the defendants in September 2012, plaintiffs asked for an explanation of the basis for Kingsley's trademark application, including evidence of the time of first use.  In response, Kingsley supplied apparently fraudulent documentation of its first use of the mark in 2004.  Additionally, the complaint asserts that Gupta signed one trademark application and Madej signed four on behalf of Kingsley for Britannica-related marks. The first, second, third, and fourth applications originally stated a date of first use in commerce of February 12, 2012.[2]

---

[2] The first use date for two of these four applications was later amended to assert a date earlier than February 12, 2012.

4

The fifth application was filed on September 16, 2012 and listed a date of first use of June 1, 2004.

The plaintiffs allege further fraudulent conduct by the defendants.  For example, the defendants represent that Kingsley has a place of business in Casper, Wyoming.  The address Kingsley provides, however, is a residential home that is occupied by Kingsley's registered agent for receiving service of process.  Further, Madej has stated under penalty of perjury that she resides and does business in "Suite 94" at an address in London.  The address is a post office box at a Mailboxes, Etc. retail location.

Plaintiffs brought this action for a declaratory judgment of trademark invalidity pursuant to 28 U.S.C. §§ 2201-2202.  Plaintiffs' other causes of action include trademark infringement under 15 U.S.C. § 1125(a) and related state law claims for a prima facie tort and civil conspiracy.

Plaintiffs served Kingsley with the complaint on July 29, 2015.  At the initial pretrial conference of September 18, the Court inquired about the status of service on Gupta and Madej.  Plaintiffs' counsel described his efforts to serve Gupta and Madej, his inability to locate them, and his desire to take discovery of Kingsley to assist in serving them.  Kingsley's counsel provided little information at the conference about the

defendants.  She did not know the whereabouts of Gupta or his role at the company.  Counsel for Kingsley further reported that Madej is a principal of Kingsley and has been in the United States but is "located in Europe."  Defense counsel explained that Kingsley provides financial services in the United States, and has some customers in Colorado, but she does not know where it is registered to provide financial services.  She also does not know where its principal place of business is located, but knows it has offices in Wyoming.

On the day of the conference, Kingsley moved to dismiss the complaint on three grounds: (1) lack of personal jurisdiction; (2) insufficient service of process; and (3) improper venue.  In support of the motion, Kingsley provided an affidavit from Madej that lists "Suite 94" at a London address as her address.  She identifies herself as an officer of Kingsley.

On October 2, the plaintiffs filed a motion for a <u>nunc pro tunc</u> extension of time to serve defendants Madej and Gupta.  The motion further seeks an order requiring Kingsley to accept service on behalf of the individual defendants whom plaintiffs allege are Kingsley's officers.

## **Discussion**

When deciding a motion to dismiss under Rule 12(b), Fed. R. Civ. P., a court must "accept all allegations in the complaint

6

as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013) (citation omitted) ("Licci II"). In evaluating whether this standard is met, the pleadings and any supporting materials are construed in the light most favorable to the plaintiff. Id. "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (citation omitted). On the other hand, a court "will not draw argumentative inferences in the plaintiff's favor." In re Terrorist Attacks on September 11, 2001, 538 F.3d 71, 93 (2d Cir. 2008) (citation omitted). Furthermore, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would "lack the factual specificity necessary to confer jurisdiction." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998). Finally, in determining proper venue, "[i]f the court chooses to rely on pleadings and affidavits, the plaintiff need

only make a <u>prima facie</u> showing of venue." <u>Gulf Ins. Co. v. Glasbrenner</u>, 417 F.3d 353, 355 (2d Cir. 2005) (citation omitted).

## I.   Personal Jurisdiction

There are two steps to analyzing personal jurisdiction:

> To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, [courts] first apply the forum state's long-arm statute.  If the long-arm statute permits personal jurisdiction, [courts] analyze whether personal jurisdiction comports with due process protections established under the Constitution.

<u>Eades v. Kennedy, PC Law Offices</u>, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted).  Plaintiffs have satisfied both the state's long-arm statute and the constitutional requirements.  Thus, there is personal jurisdiction over Kingsley.

### A. New York's Long-Arm Statute

Plaintiffs allege that personal jurisdiction exists over Kingsley under CPLR § 302(a)(3)(ii), which provides in relevant part: "[A] court may exercise personal jurisdiction over any non-domiciliary" who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  Jurisdiction under this section has five elements:

> First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce.

LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214 (2000); see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 106 (2d Cir. 2006) (identifying the same five elements).

Plaintiffs have pled sufficient facts to satisfy all five of these elements. The first, second, third, and fourth requirements are readily met. Kingsley allegedly committed a tortious act outside New York when it intentionally infringed on the plaintiffs' trademark by filing applications to block plaintiffs from using the "Britannica" mark. This cause of action arises directly from that purported tortious conduct. Further, Kingsley expected or should reasonably have expected its acts to have consequences in New York because, as described in the complaint, it specifically targeted the plaintiffs who are domiciled in New York.

District courts in this Circuit have consistently found that the tort of trademark infringement causes injury in the state where the allegedly infringed intellectual property is held. See Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 39-41 (2d Cir. 2010) (collecting cases). Other circuits have

likewise held that the tort of trademark infringement is
purposefully directed at the state where the infringed party is
located.  See, e.g., Licciardello v. Lovelady, 544 F.3d 1280,
1286-88 (11th Cir. 2008).  The New York Court of Appeals
similarly answered a narrow question certified to it from the
Second Circuit.  See Penguin Group (USA) Inc. v. Am. Buddha, 640
F.3d 497 (2d Cir. 2011).  The New York Court of Appeals
"concluded that a New York copyright owner alleging infringement
sustains an in-state injury pursuant to CPLR § 302(a)(3)(ii)
when its printed literary work is uploaded without permission
onto the Internet for public access."  Id. at 500 (citation
omitted).  Indeed, the right of a copyright holder to "exclude
others from using his property" is a "critical factor that tips
the balance in favor of identifying New York as the situs of
injury."  Id. (citation omitted).  Although this ruling was
construed narrowly and does not directly control the outcome of
this case, see Troma Entm't, Inc. v. Centennial Pictures Inc.,
729 F.3d 215, 220 (2d Cir. 2013), its reasoning is helpful in
determining the site of injury here.  According to the
complaint, Kingsley intentionally and fraudulently stopped the
plaintiffs from obtaining their trademark.  Thus, the victim of
the intentionally tortious conduct resides in New York and
experienced the intended injury here.

The fifth element of long-arm jurisdiction merits further discussion.  It requires that the defendant "derive[] substantial revenue from interstate or international commerce." LaMarca, 95 N.Y.2d at 214.  The interstate commerce requirement "is specifically designed to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character."  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 150 (2d Cir. 2011) (citation omitted).  There is no definitive ruling in the Second Circuit on precisely when revenue is considered "substantial" for purposes of CPLR § 302(a)(3)(ii).  In dicta, the Second Circuit has noted that "[o]ther courts have sensibly held that whether revenue is 'substantial' under New York Law is determined on both relative and absolute scales." Mickalis, 645 F.3d at 150 n.7.  Districts courts in this circuit have likewise found that "[n]o specific dollar threshold is required for the revenue to be deemed substantial, and the main concern is the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums."  Ikeda v. J. Sisters 57, Inc., No. 14cv3570 (ER), 2015 WL 4096255, at *5 (S.D.N.Y. July 6, 2015) (citation omitted). The plaintiffs thus must make some "showing that defendants

derived substantial revenue from interstate commerce."
Mickalis, 645 F.3d at 151.  See Farahmand v. Dalhousie Univ.,
958 N.Y.S.2d 645 (Sup. Ct. 2011), aff'd, 947 N.Y.S.2d 459 (1st
Dep't 2012) (holding that "courts look to whether or not a
foreign corporation derives substantial revenue either as a
percentage of gross income or as a gross amount").

Plaintiffs have made a prima facie showing that Kingsley
derives substantial revenue from international or interstate
commerce.  While there is no evidence that Kingsley is a
legitimate business, to the extent it does derive revenue from
anywhere it must necessarily be from international or interstate
commerce.  By filing trademark applications, Kingsley
represented that it provides business services in interstate or
foreign commerce.  Buti v. Perosa, S.R.L., 139 F.3d 98, 102 (2d
Cir. 1998) ("The Lanham Act authorizes trademark registration
only for marks that are 'used in commerce.'"  Further,
"commerce" is defined as "all commerce which may lawfully be
regulated by Congress," that is, interstate or international
commerce. (citation omitted)).  See also Couture v. Playdom,
Inc., 778 F.3d 1379, 1382 (Fed. Cir. 2015) ("To qualify for
registration, the Lanham Act requires that the mark be both used
in the sale or advertising of services and that the services
themselves have been rendered in interstate or foreign

commerce." (citation omitted)).  Further, the very nature of
Kingsley's business structure demonstrates the international
scope of its enterprise.  Kingsley is incorporated in Wyoming
but Madej, who describes herself as an officer of Kingsley,
resides in London and conducts Kingsley's business there.
Kingsley also solicits business broadly through the operation of
a website advertising its services.  Thus, Kingsley's business
is certainly not "of a local character," Mickalis, 645 F.3d at
150, and it can fairly expect to be haled into court in a
foreign forum.

Kingsley contends that jurisdiction is improper under CPLR
§ 302(a)(3)(ii) for several reasons.  First, based on Madej's
assertion that Kingsley never sold goods or services in New York
and does not "regularly" solicit business in New York, Kingsley
argues that it is outside the reach of personal jurisdiction
here.  Second, Kingsley contends that there is no showing that
it reasonably expected its acts to have consequences in the
state.  Third, Kingsley argues that the plaintiffs have not
adequately shown that it derives substantial revenue from
interstate commerce.

These arguments are misplaced.  As already described, the
plaintiffs have adequately shown that Kingsley derives
substantial revenue from interstate commerce.  Moreover, the

complaint alleges intentional, tortious conduct directed at the plaintiffs, who are domiciled in New York.  These allegations, if true, show that Kingsley targeted plaintiffs and aimed its conduct at the forum state when it did so.  In finding that Kingsley injured plaintiffs in New York and could reasonably expect that those injuries would occur, "the intended consequences" of the tortious conduct are key.  Penguin Grp. (USA) Inc. v. Am. Buddha, 16 N.Y.3d 295, 304 (2011).

Kingsley relies on Troma to argue that mere "remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here" are insufficient to confer jurisdiction. Troma, 729 F.3d at 218 (citation omitted).  This is, unlike Troma, not a "traditional commercial tort case[]."  Id. at 220 (citation omitted).  It is premised on intentional and fraudulent trademark infringement specifically directed at the plaintiffs who reside in New York.  The harms in New York are thus not "remote or consequential."  Id. at 218 (citation omitted).

## B. Due Process Clause

"To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that

the exercise of jurisdiction is reasonable in the circumstances." Eades, 799 F.3d at 168-69 (citation omitted). Minimum contacts necessary to support specific personal jurisdiction "exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there," and the commission of "some single or occasional acts" may be enough. Id. at 169 (citation omitted). Minimum contacts can also be based on "intentional, and allegedly tortious, actions [that] were expressly aimed" at the forum state. Calder v. Jones, 465 U.S. 783, 789 (1984). When defendants "knew that the brunt of that injury would be felt" in the forum state, defendants "must reasonably anticipate being haled into court there." Id. at 789-90 (citation omitted). See J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2787 (2011) ("As a general rule, the sovereign's exercise of power requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State . . . though in some cases, as with an intentional tort, the defendant might well fall within the State's authority by reason of his attempt to obstruct its laws." (citation omitted)).

Courts often use this "effects test" in determining whether there is personal jurisdiction over defendants accused of

15

intentional torts.  Licci II, 732 F.3d at 173 ("The effects test is a theory of personal jurisdiction typically invoked where . . . the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff. . . . [T]he exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum." (citation omitted)); In re Terrorist Attacks on September 11, 714 F.3d 659, 674 (2d Cir. 2013) ("[S]pecific personal jurisdiction properly exists where the defendant took intentional, and allegedly tortious, actions expressly aimed at the forum." (citation omitted)).

If there are minimum contacts, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Eades, 799 F.3d at 169 (citation omitted).  Factors in determining whether exercising jurisdiction is reasonable include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

Id. (citation omitted).  The ultimate consideration is "fair play and substantial justice."  Id. (citation omitted).

The plaintiffs have made a prima facie showing of Kingsley's minimum contacts and that jurisdiction here would be reasonable under the circumstances.  The complaint details Kingsley's intentionally tortious conduct aimed at the plaintiffs, who are domiciled in New York.  The "effects test" is thus satisfied and Kingsley has sufficient contact with New York to subject it to personal jurisdiction here in this action.

Jurisdiction is reasonable under the circumstances and comports with traditional notions of fair play and substantial justice.  The plaintiffs' interest in a New York forum outweighs Kingsley's burden in litigating here because the plaintiffs, as victims of intentionally tortious conduct, should not have to travel to an inconvenient forum to obtain relief.  Chloe v. Queen Bee of Beverly Hills, 616 F.3d 158, 173 (2d Cir. 2010) (this factor "necessarily favors" plaintiffs since a plaintiff's "headquarters are in New York").  Further, New York has an interest in protecting its citizens and corporations from illegal conduct.  Id. ("[A] state frequently has a manifest interest in providing effective means of redress for its residents." (citation omitted)).  The states have a shared interest in protecting legitimate trademark owners and thus there is good reason to resolve this dispute in the United States.

17

Kingsley has not made any developed showing that it would be burdened by litigating this lawsuit in New York.  Madej asserts that the "majority" of relevant documents are located in the United Kingdom.  If true, there is no U.S. forum that is a more efficient location for the dispute.  While Madej asserts it would be "highly inconvenient for myself or other representatives of Kingsley to have to travel to the state of New York to defend Kingsley in this case," Madej does not assert that she no longer travels to the United States, does not identify the other Kingsley representatives or their residences, and does not propose a more convenient U.S. forum.  The second and third factors weigh heavily in favor of jurisdiction here, and the fourth and fifth factors also weigh in favor of finding personal jurisdiction.

Kingsley's arguments against a finding of jurisdiction are unavailing.  Kingsley does not explicitly address the "effects test."  Instead, Kingsley relies on Madej's assertions that Kingsley has not sold or marketed its services in New York to argue that there is insufficient evidence that its alleged misconduct was directed at New York.  Although Madej asserts that Kingsley has never conducted business in New York, she offers no description of the substance or size of Kingsley's operations, the location of its workforce or customers, or the

18

manner in which it solicits business.  Her limited assertions are insufficient to overcome the plaintiffs' allegations that Kingsley has purposefully aimed its tortious conduct at the forum state.  This is sufficient to satisfy due process.

Further, Kingsley argues that jurisdiction would be unreasonable because Madej lives in London and most of the relevant business records are in the United Kingdom, rendering litigation here difficult.  This action was triggered by a series of filings made by Madej and Gupta on behalf of Kingsley with the PTO for registration of marks in the United States. These marks can only be registered in this country if they are being used in commerce in the United States.  Kingsley thus cannot evade answering for intentionally tortious conduct simply because doing so would be inconvenient to one of its officers who lives abroad.  See Calder, 465 U.S. at 790 ("An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.").  More is required for jurisdiction to be "unreasonable" under the Due Process Clause.  Chloe, 616 F.3d at 173 (finding that a defendant's "generalized complaints of inconvenience . . . do not add up to a compelling case that the presence of some other considerations would render jurisdiction unreasonable" (citation omitted)).

## II.  Service of Process

Under BCL § 307(a), a foreign corporation not authorized to do business in New York can be served via the Secretary of State if the "non-domiciliary would be subject to the personal or other jurisdiction of the courts of this state."  In addition to delivering process to the Secretary of State, a plaintiff must "sen[d] [process] . . . to such foreign corporation by registered mail."  Id. § 307(b)(2).  "Where service of a copy of process was effected by mailing . . . proof of service shall be by affidavit of compliance with this section" and "there shall be filed with the affidavit of compliance either the return receipt" or "other official proof of delivery."  Id. §§ 307(b)(2) & (c)(2).  Plaintiffs have 30 days after serving process to file the affidavit and proof of delivery.  Id. § 307(c)(1).  "[S]trict compliance with the procedures of [BCL] § 307 is required to effect service on an unauthorized foreign corporation."  Flick v. Stewart-Warner Corp., 76 N.Y.2d 50, 57 (1990).  The "proof called for in the affidavit of compliance is that the required actual notice has been given either by personal service or by registered mail."  Id. at 56.  "These are not mere procedural technicalities but measures designed to satisfy due process requirements of actual notice."  Id.

Plaintiffs complied with BCL § 307(b).  The plaintiffs

served Kingsley by filing a copy of the summons and complaint with the New York Secretary of State.  The plaintiffs then sent a copy by registered mail with return receipt requested to Kingsley's Wyoming address and filed an affidavit of compliance on August 26.

Kingsley raises two arguments that service of process was improper.  The first is that in order to serve a foreign, unauthorized corporation under BCL § 307, New York courts must have personal jurisdiction over the foreign corporation. Kingsley argues that there is no personal jurisdiction here. The second is that service was improper because the plaintiffs originally failed to include the return receipt with their affidavit of service.  On September 30, after Kingsley filed its motion to dismiss, plaintiffs re-filed an affidavit of service with the return receipt attached.  The return receipt is dated August 4.

As discussed above, New York courts have specific personal jurisdiction over Kingsley and therefore its first argument fails.  It appears that Kingsley has abandoned its argument that service was improper because plaintiffs originally failed to include a return receipt with their affidavit of compliance.  In any event, plaintiffs cured this minor defect in service by re-filing their affidavit of compliance with the return receipt

attached.  Typical cases finding jurisdictional defects in service, like Flick itself, involve a more serious omission such as a failure to mail the summons and complaint or file any affidavit of compliance with BCL § 307.  See, e.g., VanNorden v. Mann Edge Tool Co., 910 N.Y.S.2d 189, 190 (3d Dep't 2010) (finding service defective where the affidavit of compliance did not state that the plaintiffs mailed the summons and complaint, and process was in fact mailed to the wrong address); Flannery v. Gen. Motors Corp., 625 N.Y.S.2d 556, 556 (1st Dep't 1995) (service was defective where no affidavit of compliance was filed).

Here, plaintiffs followed the procedures of § 307(b).  Further, Kingsley had actual notice of the suit because it filed a motion to dismiss and participated in the initial conference on September 18.  Late filing of the return receipt thus will not defeat personal jurisdiction.

## III. Venue

Finally, Kingsley moves to dismiss this action on the ground that venue does not lie in this district since "Kingsley is not a resident of the United States."  Kingsley is a United States corporation organized under the laws of Wyoming.  Pursuant to the rules governing venue, Kingsley may be sued in New York.

The Lanham Act does not have a specific venue provision. Thus, the provisions in 28 U.S.C. § 1391 govern the venue determination.  See Steen v. Murray, 770 F.3d 698, 701 (8th Cir. 2014).  Under § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Residency for venue purposes is defined in 28 U.S.C. § 1391(c), which provides in relevant part that "an entity with the capacity to sue and be sued in its common name . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(2); see Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 431 (2d Cir. 2005).  Further, "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to the other defendants."  28 U.S.C. § 1391(c)(3).

Plaintiffs have made a prima facie showing that venue is proper.  Gulf Ins. Co., 417 F.3d at 355.  Here, Kingsley offers no information about Gupta's residence and asserts that Madej resides in Great Britain.  Madej's foreign residence is therefore immaterial in determining the proper venue.  The

23

remaining defendant, Kingsley, is an entity.  Thus, disregarding Gupta's residence because it is unknown, venue would be proper here under §§ 1391(b)(1) and (c)(2).[3]  Under 28 U.S.C. § 1391(c)(2), a defendant entity resides in any judicial district where it is subject to the court's personal jurisdiction.  As discussed at length above, the Southern District of New York has personal jurisdiction over Kingsley in this action.

Kingsley's arguments that venue is improper again rest on its view that this Court does not have personal jurisdiction over it.  In arguing that it is not a resident of New York, Kingsley assumes that 28 U.S.C. § 1392(c)(2) does not apply because it is not subject to personal jurisdiction here. Because the Court has personal jurisdiction, however, Kingsley is deemed a resident of New York for venue purposes.  Similarly, Kingsley misapplies the residency provision for foreign defendants in (c)(3) when it argues that Kingsley is a United

---

[3] Under § 1391(b)(3), "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is a proper venue.  "[V]enue may be based on this subsection only if venue cannot be established in another district pursuant to any other venue provision."  Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 434 (2d Cir. 2005).  If at the time the lawsuit was filed Gupta was a resident of the United States in a state other than Wyoming, venue is proper in this district under this fallback provision because neither (b)(1) nor (b)(2) would apply to this action.

States corporation and therefore cannot be sued in "any judicial district" pursuant to (c)(3).  Kingsley's United States domicile is Wyoming and, as discussed above, it is resident in any judicial district where it is subject to the court's personal jurisdiction under (c)(2).  Thus, (c)(3) is not relevant with respect to Kingsley; it only informs the venue determination for Madej.

### IV.  Extension to Serve Gupta and Substitute Service for Madej

On October 2, plaintiffs filed a motion for a nunc pro tunc extension of time to serve Gupta and an order requiring Kingsley to accept service on behalf of Madej.  Plaintiffs assert that Madej has intentionally evaded service by claiming a residence at a post office box address.  Specifically, Madej claims that she resides at "Suite 94" at a London address, which corresponds to a post office box.  Madej stated in a sworn declaration that she is an officer of Kingsley.

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Rule 4(m) further provides that

"subdivision (m) does not apply to service in a foreign country under Rule 4(f)."

The Court has "discretion to grant extensions even in the absence of good cause." Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007). According to the Advisory Committee Notes to the 1993 Amendment to Rule 4(m), "evading service" constitutes grounds for extending the time limit to serve defendants, even in the absence of other "good cause" under the Rule. See Zapata, 502 F.3d at 195. Based on the record here, it appears that the Madej is evading service and that, despite diligent efforts, the plaintiffs have been unable to locate Gupta. At the September 18 conference, counsel for the plaintiffs represented that he hoped to take discovery and use that information to determine where Gupta might be served. This is sufficient to support extending the time to serve Gupta nunc pro tunc. As explained below, this extension is only necessary for Gupta because the timing restrictions in Rule 4(m) do not apply to parties served in foreign countries pursuant to Rule 4(f). The plaintiffs will be allowed to take discovery of Kingsley to determine where Gupta resides and how he may be served.

The plaintiffs' motion further asks the Court to order Kingsley to accept service of process for its officers. Madej

is an officer of Kingsley, and the Court does not have sufficient information to determine whether Gupta is also an officer.  Under Rule 4(f), "an individual . . . may be served at a place not within any judicial district of the United States" in one of several ways.  One of those methods is by court-directed service.  An international party may be served "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).[4]  "[T]he decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court."  <u>Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries</u>, 766 F.3d 74, 81 (D.C. Cir. 2014) (citation omitted).

Foreign nationals are assured under our nation's Due

---

[4] The Hague Service Convention does not prohibit service on the officer of a corporation living in the United Kingdom through the corporation's United States agent for service of process.  <u>See</u> <u>Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters</u>, Nov. 15, 1965, [1969] 20 U.S.T. 361, T.I.A.S. No. 6638.  Notably, Article 10(a) of the Hague Service Convention appears to allow for service of "judicial documents" on foreign defendants by "postal channels."  The United Kingdom does not object to service by those means.  <u>See</u> <u>United Kingdom: Central Authority & Practical Information</u>, http://www.hcch.net/index_en.php?act=authorities.details&aid=278 (accessed October 21, 2015) (listing no opposition to Article 10(a)).  Thus, although the plaintiffs will be permitted to serve Madej through Kingsley, service to Madej at "Suite 94" by first class mail may be an alternative option as long as that address is not entirely fabricated.

Process Clause "of either personal service, which typically will require service abroad and trigger the [Hague Service] Convention, or substituted service that provides notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988) (citation omitted).  The Advisory Committee Notes to the 1993 amendments to Rule 4(f) explain that "an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law." See Freedom Watch, 766 F.3d at 83 (interpreting Rule 4(f)(3) to allow methods of service that contravene foreign law but are not specifically prohibited by international agreement).

Thus, allowing service of Madej through service to Kingsley is appropriate.  The Supreme Court has explained that "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." Henderson v. United States, 517 U.S. 654, 672 (1996).  "[N]o one form of substitute service is favored over any other so long as the method chosen is reasonably calculated . . . to give the defendant actual

notice," and in fashioning substituted service on a defendant located abroad, a court should "tailor the manner of service to fit the necessities" of a particular case.  Int'l Controls Corp. v. Vesco, 593 F.2d 166, 176 (2d Cir. 1979) (commenting on the predecessor to Rule 4(f)(3), former Rule 4(i)(1)(E), which provided for service "as directed by order of the court" on a defendant located abroad).

In this case, where plaintiffs have been unable, despite diligent efforts, to serve Madej in the United Kingdom, substitute service on Madej through Kingsley accomplishes the goals of service while respecting the requirements of due process and Rule 4(f)(3).  Madej is an officer of Kingsley, and counsel for Kingsley stated at the September 18 conference that she will represent Madej when she is served with the summons and complaint.  Further, Madej provided a sworn declaration in support of Kingsley's motion to dismiss, indicating that she has actual notice of the suit, she would not be prejudiced by service through Kingsley, and that she is sufficiently connected to Kingsley to render service through the corporation appropriate.  There is thus no reason to conclude that service on Madej through Kingsley would not provide her, as constitutional due process requires, "notice reasonably calculated, under all the circumstances, to apprise [her] of the

pendency of the action and afford [her] an opportunity to present [her] objections." Luessenhop v. Clinton County, N.Y., 466 F.3d 259, 269 (2d Cir. 2006) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

## Conclusion

Kingsley's September 18, 2015 motion to dismiss is denied. The plaintiffs' October 2, 2015 motion for a nunc pro tunc extension of time to serve Gupta is granted.  The plaintiffs' motion for substitute service on Madej through Kingsley is granted, and plaintiffs may serve Madej by serving Kingsley through a method of service that is valid under the Federal Rules.


Dated:    New York, New York
          October 23, 2015


_____
                      DENISE COTE
          United States District Judge