**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREGORY A. LEWIS AND BRITANNICA CAPITAL PARTNERS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MALGORZATA MADEJ, KINGSLEY VENTURES CORP. AND SANJAY GUPTA, <br><br> Defendants. | 15-cv-2676 <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER |

Plaintiffs submit the instant memorandum in opposition to Defendants' motion for protective order regarding the depositions of Mr. Gupta and Ms. Madej. As detailed herein, Defendants have incomplete and distorted the facts (at best) or out-and-out perjured themselves (at worst) in an effort to disregard the Court's order and avoid discovery yet again. Neither the distorted facts nor the relevant law supports Defendants' request.

**ARGUMENT**

**I    Defendants' Recitation Of Facts Are Incomplete  And Distorted, And Most Likely Perjurious**

Defendants devote roughly half of their motion papers to a factual recitation that is incomplete and distorted. The recitation is supported by declarations from Mr. Gupta (the "Gupta Declaration", ECF Document No. 99-3) and Ms. Madej (the "Madej Declaration", ECF Document No. 99-2) that are equally incomplete and distorted, and at time, perjurious.

In a nutshell, Defendants contend that because they live in England and have their principal place of business there, they should not be forced to travel to New York for deposition (as the Court previously ordered). Defendants attempt bolster this position by claiming (a) Ms.

Madej has sustained significant leg injuries in an unidentified accident; (b) Mr. Gupta teaches a "continuing education class"; and (c) both Mr. Gupta and Ms. Madej cannot be torn away from their "senior management positions in Kingsley." None of these facts have any support.

**A**      **Ms. Madej and Mr. Gupta have not established that they live in England or have offices there**

Neither Ms. Madej nor Mr. Gupta have demonstrated with any objective evidence that they actually live in England. Ms. Madej initially claimed in affidavits to be "of Suite 94, 22 Notting Hill Gate, London". See Exhibit 1 hereto. Plaintiffs' counsel later determined that 22 Notting Hill Gate, London, is the address of a Mailboxes Etc. store, and "suite 94" actually refers to "box 94" found there. Confronted with this discovery, Ms. Madej altered her statement to more carefully state that she is "of *correspondence address* at Suite 94, 22 Notting Hill Gate, London". Madej Declaration at 1 (emphasis added). Mr. Gupta's latest declaration followed suit, with a similar statement (that he is "with correspondence address of Suite 94, 22 Notting Hill Gate, London"). Gupta Declaration at 1. Never has Ms. Madej nor Mr. Gupta identified where they actually live or where Kingsley's physical offices are located. The only address they have ever given are postal boxes, which can be rented at any location from any location. Citation to postal boxes – even if they are referred to as "suites" – cannot establish place of residence nor place of business.

On the other hand, the few objective facts so far gleaned point to a U.S. residence for Ms. Madej. Of the three Madej affidavits of Exhibit 1, two were sworn by Ms. Madej before notary publics in Massachusetts. *Id.* Likewise, prior to obtaining counsel in the TTAB proceeding prior to this action, Ms. Madej mailed at least two documents to Plaintiffs' counsel from Massachusetts, as evidenced by the United States postage and Massachusetts postmark. See

Exhibit 2 hereto.[1]  Thus, while less than extensive, the only objective evidence of where Ms. Madej actually resides indicates not the U.K., but Massachusetts.

As for objective evidence of Mr. Gupta's residence, there appears to be none; instead, Mr. Gupta's location – and Defendants' ability to locate him –  appear to fluctuate.  First, as of September 18, 2015, Ms. Everhart, Defendants' previous counsel, indicated that she was in contact with Mr. Gupta, who had advised her that he was not "aware of any attempted service of process" on him.  See Kingsley Motion to Dismiss at 5 (ECF Document No. 15).  Mr. Gupta's whereabouts were known.  Subsequently, at the December 18, 2015 status conference, Mr. Tsirkin, present counsel for Defendants, stated unequivocally to the Court that Defendants had not as of that date been able to locate Mr. Gupta, but that they believed that he was residing "somewhere in Europe."  Mr. Gupta's whereabouts were unknown.  Next, on January 12, 2016, Ms. Everhart stated in a memo to the Court that as of November 2015, "neither we [Defendants' counsel] nor Ms. Madej knew the then whereabouts of Mr. Gupta, but that Ms. Madej believed him to be in Europe.  Thereafter, she located Mr. Gupta."  Statement in Connection with Answer on Behalf of Defendant Sanjay Gupta at 2, ¶ 5 (ECF Document No. 79-1).  By virtue of some undisclosed effort, Mr. Gupta was "located" yet again.  Throughout all of this, Mr. Gupta has never provided an actual residential address nor any address for any place of business, only the mailbox at 22 Notting Hill Gate.

Finally, Defendants have never provided any office address for their business.  Instead, they have provided a series of mailbox addresses – the first at Mt. Holyoke College in

---

[1]  Interestingly, each of these U.S. postmarked mailings bore a return address label with the Notting Hill Gate address.  See Exhibit 2.  Apparently, Ms. Madej was trying to give the impression that she was in the U.K. when she was in fact in Massachusetts.

Massachusetts, and the second at the Notting Hill Gate address – as well as at the residence of one Amy Chambers, a "Wyoming Commercial Registered Agent" with whom Defendants have contracted for registered agent services. See Exhibits 1 and 3 and First Amended Complaint at 31-32, ¶¶ 194-200 (ECF Document No. 21-1).

Viewed together, the objective facts do not show that Ms. Madej, Mr. Gupta or their business reside in London. If anything, they indicate that Ms. Madej resides in Massachusetts, Mr. Gupta resides in a state of constant flux, and the Kingsley business resides nowhere at all.

**B      Ms. Madej's claim of an "accident" is without detail and is unsubstantiated, and in any event, is irrelevant to Mr. Gupta's deposition**

Separate and apart from the purported impact on Defendants' business, Defendants have claimed that Ms. Madej (an apparently, Mr. Gupta) cannot attend depositions in New York due to injuries recently suffered by Ms. Madej (but not by Mr. Gupta). Ms. Madej claimed that

> my current medical condition will make it very difficult, if not impossible, to travel to New York for my deposition. I am currently recovering from a devastating automobile accident that occurred in 2015 resulting in severe injuries, including bone fractures. My leg is swollen, and the fractured bones are currently held in position by plates and screws, and I am unable to walk or travel easily. I am in great pain and require medical assistance.

Madej Declaration at 1-2, ¶ 3. Ms. Madej further informed the Court that a

> [l]ong-haul flight would be highly risky to me because of the physical and mental stress of travel and flight, and because I would be susceptible to blood-clotting complications such as deep-vein thrombosis and pulmonary embolism. Further, airlines have the right to refuse passengers with conditions that may worsen, or have serious consequences, during the flight.

Madej Declaration at 2, ¶ 4. Ms. Madej initially provided no further detail of her accident or resulting condition, nor any medical records confirming her allegations.

4

In light of Ms. Madej's unsubstantiated claim of injury, the Court *sua sponte* ordered "that, by Monday, January 25, the defendants shall provide the plaintiffs with a copy of Madej's medical records that prove her inability to travel." Order of January 22, 2016 (ECF Document No. 100). In response, Ms. Madej produced: (1) x-rays purportedly of her injury but produced separate and apart from any substantive medical records; (2) a "note", in Polish, from an orthopedist located in Busko-Zdroj, Poland; and (3) a purported "approximate translation" of the doctor's note. See Exhibit 4 hereto. Absent from the produced documents were: (1) any hospital records or other coherent, substantive medical records; (2) any records made contemporaneously with the purported accident (e.g., emergency room intake records); (3) any medical records from England, where the accident presumably took place; (4) any x-rays of the injuries prior to being treated; and (5) any records confirming that the x-rays are in fact of Ms. Madej.

Upon receiving the purported medical records, the undersigned contacted counsel for Ms. Madej and requested that Ms. Madej provide the missing documents and information.[2] Counsel for Ms. Madej refused. See Exhibit 5 hereto. Ms. Madej's claims of injury preventing her from traveling for her deposition thus remain unsupported by any reliable evidence, and her motion for protective order should be refused accordingly.

---

[2]  Undersigned counsel also requested that Ms. Madej (1) explain why her birth date and address were redacted from the doctor's "note" and (2) why she was treated in Poland for an accident that occurred in the U.K. Defendants' counsel refused to provide any substantive explanation for the latter, and would say of the former only that the information was redacted as lacking "relevancy." See Exhibit 5. Defendants' counsel refused to produce an unredacted version of the document. Also, Defendants' counsel initially indicated that Ms. Madej's address had been redacted, but subsequently and without explanation stated that Ms. Madej's *parents'* address had been redacted. Defendants' counsel has provided no explanation for this change.

5

Regardless of Ms. Madej's alleged injuries, Mr. Gupta can still attend his deposition in New York. Mr. Gupta does not claim to have been in any accident nor to have been affected by Ms. Madej's, and so he is medically free to travel on a "long-haul flight" to New York.

**C**      **Defendants incredulously claim that Mr. Gupta is now indispensable to Defendants' business, despite the fact that his whereabouts were unknown to Ms. Madej as recently as November or December**

Perhaps most striking of all the allegations contained in the Gupta and Madej declarations is the claim that Mr. Gupta cannot come to New York for deposition because he is indispensable to Defendants' business and so must remain in London. Putting aside the fact that Defendants do not appear to have an actual place of business anywhere in the U.K., Mr. Gupta's disappearance until roughly November or December of last year demonstrates definitively that Defendants' alleged business can do just fine in his absence.

In his declaration, Mr. Gupta informs the Court that

> I occupy a senior management position in Kingsley Venture Corporation, and my absence from the workplace for a number of days would have an adverse impact on my employment and my business and that of Kingsley, which the company is poorly positioned to absorb.

Gupta Declaration at 1, ¶ 4. The facts belie this statement. As discussed fully in section I.A above, Ms. Madej and her attorneys were unable to locate Mr. Gupta for some indeterminate time prior to and including November/December, 2015. The best Ms. Madej was able to determine, according to Mr. Tsirkin at the December 18, 2015 status conference, was that Mr. Gupta was residing "somewhere in Europe."

Yet despite Mr. Gupta's absence and unknown location through November/December 2015, Defendants' alleged business did not crash and burn. Mr. Gupta's presence (or even

6

knowledge of his location) was in no way necessary for the ongoing viability of Defendants' business nor its day-to-day operation. Defendants are disingenuous in suggesting otherwise.[3]

## II  The Law Does Not Support A Protective Order

Courts have wide discretion in managing discovery, including the manner in which depositions are taken. *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014) ("A district court has broad latitude to determine the scope of discovery and to manage the discovery process"); *Forauer v. Vermont Country Store, Inc.*, No. 5:12-CV-276, 2014 WL 2612044, at *6 (D. Vt. June 11, 2014) (courts have broad discretion to determine how, when and where depositions take place); *and see* Fed. R. Civ. P. 26(c)(1).

In managing depositions, the general rule that a corporation is deposed at their place of business is "merely a decisional rule that facilitates determination when other relevant factors do not favor one side over the other." *Media Grp., Inc. v. In-finn-ity Prods., Inc.*, No. 3:99CV1014 (PCD), 2000 WL 303221, at *1 (D. Conn. Feb. 1, 2000); *Buzzeo v. Board of Education*, 178 F.R.D. 390, 392 (E.D.N.Y.1998). Thus, when "other relevant factors favor" one location over another, a court may freely exercise its discretion and order depositions to take place within the forum or elsewhere. *Id.*

In the present case, the Court during the December 18, 2015 status conference indicated that all depositions of Defendants were to take place in New York. Defendants have offered no

---

[3]  Mr. Gupta's claim that he teaches a "continuing education class" is devoid of any supporting detail and cannot be corroborated. Indeed, while Mr. Gupta claims to teach such a class, his disappearance "somewhere in Europe" suggests otherwise.

substantive justification for disregarding the Court's determination, and so Defendants' motion for protective order should be denied.

## CONCLUSION

Defendants once again seek to "halt" discovery through the filing of the present motion for protective order. For the foregoing reasons, Defendants' motion should be denied, and the depositions ordered to take place in New York.

Dated: January 26, 2016

Plaintiffs Gregory A. Lewis and Britannica
Capital Partners, LLC
by its attorney,

_____
Jeffrey Sonnabend (JS1243)
SonnabendLaw
600 Prospect Avenue
Brooklyn, NY 11215-6012
718-832-8810
JSonnabend@SonnabendLaw.com