**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GREGORY A. LEWIS and BRITANNICA
CAPITAL PARTNERS, LLC,

                         Plaintiffs/
                         Counter-Defendants,

                                   15cv2676 (DLC)

        -against-

MALGORZATA MADEJ, KINGSLEY VENTURES
CORP. and SANJAY GUPTA,

                         Defendants/Counterclaimants/
                         Third-Party Plaintiffs,

        -against-

MICHAEL ROBERT EGAN, RICHARD MARK FELDMAN,
LESLIE A. WHEATON, LUXOR FINANCIAL GROUP, INC. and KEN NORENSBERG,

                         Third-Party Defendants.

_____

## <u>DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

 

Vladimir Tsirkin
Spektor & Tsirkin, P.C
40 Rector Street, Suite 1502
New York, NY 10006
vtsirkin@spetslaw.com

***Attorney for Defendants***

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................................. 1

II. STATEMENT OF UNDISPUTED FACTS............................................................................ 5

A. The Kingsley Britannica Marks .................................................................................... 5
B. Plaintiffs' Misappropriation and Misuse of the Kingsley Britannica Marks.............................. 8

III. ARGUMENT ...................................................................................................................... 11

A. The Legal Standard...................................................................................................... 11
B. Plaintiffs' Prima Facie Tort Claim Fails as a Matter of Law Because Plaintiffs' Complaint asserts that Defendants' Conduct Is Otherwise Unlawful. .................................................. 13
C. Plaintiffs' Civil Conspiracy Claim Fails as a Matter of Law Because New York Does Not Recognize a Civil Cause of Action for Conspiracy. .................................................. 14
D. Plaintiffs' Claim for Federal Trademark Infringement Fails as a Matter of Law Because It Is Undisputed That Defendants Made No Prior Use in Commerce or Analogous Use of the BCP Britannica Marks.......................................................................................... 14

1. Plaintiffs Concede They Did Not Use the BCP Britannica Marks in Commerce before June 21, 2013.......................................................................................................... 15
2. Plaintiffs Cannot Lawfully Have Made Analogous Use of the BCP Britannica Marks in Commerce before Their FINRA Registration on June 21, 2013, Nor Have They Produced Proof of Prior Analogous Use.................................................................................. 18
3. Defendants Have Submitted Undisputed Proof of Kingsley's Use of the Kingsley Britannica Marks in Commerce at Least by February 12, 2012, and Even an Email from Plaintiff Lewis to Kingsley Recognizing the Existence of Kingsley's Britannica Website in May 2012................ 21

E. Plaintiffs' Action for Declaratory Judgment of Trademark Invalidity Fails as a Matter of Law Because Plaintiffs Cannot Show an Injury to a Legally Protected Interest and Because Subject Matter Jurisdiction Is Lacking if Plaintiffs' Federal Lanham Act Claim Is Dismissed............ 22
F. Plaintiffs Should Not Be Granted an Opportunity to Take Discovery for Purposes of Responding to This Motion Pursuant to Fed. R. Civ. P. 56(d) Because They Concede by Their Own Pleading That They Have No Superior Rights to the Subject Marks. .............................. 24

IV. CONCLUSION ...................................................................................................................... 25

# I.      INTRODUCTION

Defendants, Kingsley Ventures Corporation ("Kingsley"), Malgorzata Madej, and Sanjay Gupta, pursuant to Fed. R. Civ. P. 12(c) and 56, submit this memorandum of law in support of its motion for judgment on the pleadings or, in the alternative, for summary judgment.

This case involves claims for a declaratory judgment of invalidity of trademarks, trademark infringement, and related tort claims asserted by Plaintiffs, Gregory A. Lewis and Britannica Capital Partners, LLC ("BCP"), against Defendants, as well as counterclaims asserted by Kingsley for federal and state trademark infringement and related tort claims.

The Court previously dismissed Kingsley's counterclaim against Plaintiffs for prima facie tort because Kingsley has asserted that Plaintiffs' conduct is unlawful on several grounds. Plaintiffs' Complaint, likewise, asserts that Defendants' conduct is unlawful on several grounds, and thus, Plaintiffs' claim for prima facie tort should be dismissed as well.  Likewise, the Court previously dismissed Kingsley's counterclaim against Plaintiffs for civil conspiracy because such cause of action does not exist in the State of New York.  For that same reason, Plaintiffs' claim against Defendants for civil conspiracy should be dismissed.

The parties' recent exchange of discovery has confirmed that Plaintiffs' remaining claims also should be dismissed as a matter of law.  In order for Plaintiffs to have a viable trademark infringement claim against Defendants, they must be able to establish prior use in commerce, or analogous use, of the Britannica marks at issue.  The pivotal date is February 12, 2012, the date Kingsley filed its first trademark application for a Britannica mark in the U.S. Patent and Trademark Office ("USPTO") and identified on such application its first use in commerce as of at least that date.

1

Plaintiffs concede in their Amended Complaint that they did not begin using their Britannica marks in commerce until June 21, 2013. (Amended Complaint ("Complaint"), Doc. No. 21-1, ¶¶ 23, 25.) Consistent with that concession, on May 8, 2013, Plaintiffs amended their U.S. trademark application for their Britannica mark from "use in commerce" (they originally listed a date of first use in commerce of December 19, 2011) to "intent to use."[1] (Declaration of Malgorzata Madej ("Madej Decl."), ¶ 18, Ex. K.) In addition, Plaintiffs' own website has identified the founding date of BCP as July 2013 (Madej Decl., ¶ 12, Ex. E), and the first trade report issued by the National Securities Clearing Corporation identifies Plaintiffs' first trade date under the Britannica mark as August 23, 2013. (Madej Decl., ¶ 16, Ex. I.) Indeed, and consistent with all of the foregoing, Plaintiffs have produced not a single document showing proof of use of their purported Britannica marks in commerce prior to their asserted use date of June 21, 2013. Thus, there is no dispute that Plaintiffs were not using the Britannica marks in commerce before June 21, 2013.

While use "analogous" to trademark use can establish priority for purposes of a trademark infringement claim in the event a party cannot establish prior use in commerce, analogous use must be "open and notorious…in other words, analogous use must be of such a nature and extent that the mark has become popularized in the public mind so that the relevant segment of the public identifies the marked goods with the mark's adopter." *Am. Express Co. v. Goetz*, 515 F.3d 156, 161-62 (2d Cir. 2008). Plaintiffs have produced not a single document dated as of February 12, 2012, with the exception of a letter from Plaintiff Lewis to the Financial Industry Regulatory Authority ("FINRA") dated January 25, 2012, stating: "Please check and if

---

[1] Lewis submitted such amendment after Kingsley pointed out in the TTAB proceedings that Lewis's specimens submitted in support of his application appeared to be misappropriated from third parties. Notably, Lewis did not mention the amendment in the TTAB proceeding.

available place on hold the name: Britannica Capital Partners LLC," and a response from FINRA confirming name availability.

Those documents do not in the least suffice to establish use in commerce or analogous use. To the contrary, the exchange is an acknowledgement by Plaintiff Lewis that he was not yet using the mark in any manner, much less in commerce. Further, Plaintiffs concede that FINRA registration was required before they could provide the services under which they are using the Britannica marks. FINRA likewise bars marketing of such services until registration, so Plaintiffs could not have made analogous use of the marks before their registration on June 21, 2013, without violating FINRA regulations, nor is there any evidence they did so.

In contrast, Defendants have produced more than 500 pages of documents establishing beyond dispute Kingsley's proof of use of the Britannica marks in commerce at least as of February 12, 2012 (and certainly much before that time). Defendants submit herewith the Declaration of Kingsley officer Malgorzata Madej attesting to the use of the marks in commerce by Kingsley as of February 12, 2012, as well as printouts of Kingsley's websites, financial reports prepared for clients, marketing materials, phone records, records of downloads by customers (identified by their location in the United States) of Kingsley's reports online, and invoices all demonstrating use of the marks in commerce on or before February 12, 2012. Plaintiffs' allegations that this massive amount of proof is fabricated are simply incredible.

Further, on May 19, 2012 — prior to Plaintiffs' asserted first use date of June 21, 2013 — Plaintiff Lewis himself sent emails to Kingsley at two of its email addresses listed on Kingsley's Britannica website (investorrelations@britannicacap.com and info@britannicacap.com), his emails evidencing Plaintiffs' awareness as of that date that Defendants were using the Britannica mark in commerce on their website in connection with financial services at least by then. (Madej

Decl., ¶ 24, Ex. P.)  Plaintiffs have produced no documents reflecting any use in commerce or analogous use by them of the Britannica mark on or as of that date.

Plaintiffs, in fact, have had access to proof of Kingsley's use of the Britannica marks since at least 2012, when Kingsley first provided them with proof of its use of the marks, and again were provided with it in the USPTO Trademark Trial and Appeal Board ("TTAB") proceeding involving the same dispute, where the TTAB deemed the evidence "credible" and Plaintiffs' challenge of it "unreasonable."  Plaintiffs' aggressive, costly, and relentless pursuit of their specious claims should be halted, as they have not, and cannot, rebut Kingsley's clear priority of rights to the Britannica marks.  The facts are undisputed that Plaintiffs were not using in commerce the Britannica marks, or making analogous use of those marks, prior to Kingsley's first use of the marks.  Therefore, Plaintiffs cannot meet the first requirement necessary to establish trademark infringement: prior use or analogous use of the subject mark.  Further, without prior use, Plaintiffs cannot establish that they have been harmed by Kingsley's use of the Britannica marks and cannot establish standing or grounds for their cause of action for a declaration judgment of invalidity of Kingsley's Britannica marks.  Accordingly, both claims fail as a matter of law, and Defendants should be granted summary judgment in their favor.

Finally, while Plaintiffs will undoubtedly seek to finalize discovery pursuant to Fed. R. Civ. P. 56(d) before responding to Defendants' motion, Plaintiffs' inability to produce proof of their right to challenge Defendants' use and registration of the Britannica marks should preclude them from doing so.

4

## II. STATEMENT OF UNDISPUTED FACTS

### A. The Kingsley Britannica Marks

Kingsley is a vendor of certain financial and business services. Kingsley and/or its predecessor(s) have used the trademark BRITANNICA and similar marks to identify its goods and services in commerce for more than a decade, and particularly by at least February 12, 2012. (Madej Decl., ¶ 2.)

Kingsley filed trademark applications in the USPTO for the following marks on the corresponding dates and in connection with the corresponding services, listing the dates of first use in commerce for each as indicated:

**BRITANNICA, February 12, 2012, Serial No. 85540559**
(DATE OF FIRST USE IN COMMERCE: At least by February 12, 2012[2])

Capital investment services; Commodity investment advice; Consultancy of capital investment; Financial asset management; Financial services, namely, investment advice, investment management, investment consultation and investment of funds for others, including private and public equity and debt investment services; Financial services, namely, operation and management of hedge funds, commodity pools and other collective investment vehicles, and trading for others of securities, options, futures, derivatives, debt instruments and commodities; Hedge fund investment services; Investment management; Private equity fund investment services; Providing venture capital, development capital, private equity and investment funding; Real estate investment services; Securities trading and investing services for others via the internet.

**BRITANNICA CAPITAL, June 22, 2012, Serial No. 85659514**
(DATE OF FIRST USE IN COMMERCE: At least by February 12, 2012)

Capital investment services; Commodity investment advice; Commodity trading for others; Currency trading; Financial investment analysis and stock research; Financial planning and investment advisory services; Financial services, namely, investment advice, investment management, investment consultation and investment of funds for others, including private and public equity and debt investment services; Financial services, namely, operation and management of hedge funds, commodity pools and other collective investment vehicles, and trading for others of securities, options, futures, derivatives, debt instruments and commodities; Financial services, namely, proprietary trading in commodities, securities, options, futures, equities and fixed income products in the U.S. and overseas market securities; Global investment

---

[2] This mark was actually used in commerce as early as 2004. (Madej Decl., ¶ 3.)

research services; Hedge fund investment services; Investment management; Investment of funds for others; Leveraged buy outs and investments in financially distressed or underperforming companies; On-line real-time currency trading; On-line trading of financial instruments, shares, options and other derivative products; Private equity fund investment services; Real estate funds investment services; Real estate investment services; Securities trading and investing services for others via the internet.

**BRITANNIA, July 8, 2012, Serial No. 85671118**
(DATE OF FIRST USE IN COMMERCE:  At least by June 1, 2004)

Capital investment services; Equity capital investment; Financial investment analysis and stock research; Financial investment in the field of currencies, commodities, bonds, loans, stocks, convertible and hybrid securities, futures, options, swaps, derivatives; Financial risk management; Financial services, namely, investment advice, investment management, investment consultation and investment of funds for others, including private and public equity and debt investment services; Financial services, namely, operation and management of hedge funds, commodity pools and other collective investment vehicles, and trading for others of securities, options, futures, derivatives, debt instruments and commodities; Hedge fund investment services; Investment management; Securities trading and investing services for others via the internet.

**BRITANNIC, July 8, 2012, Serial No. 85671115**
(DATE OF FIRST USE IN COMMERCE:  At least by March 1, 2008)

Capital investment services; Commodity investment advice; Currency trading; Financial investment in the field of currencies, commodities, bonds, loans, domestic and international debt instruments, US equities, international equities, convertible securities, hybrid securities, options, futures, swaps, ETFs and derivatives; Financial risk management; Financial services, namely, operation and management of hedge funds, commodity pools and other collective investment vehicles, and trading for others of securities, options, futures, derivatives, debt instruments and commodities; Financial services, namely, the trading of financial instruments, securities, shares, options and other derivative products; Hedge fund investment services; Investment management; Providing information and research in the field of finance and financial investments; Securities trading and investing services for others via the internet.

**BRITANNICA (design mark), September 16, 2012, Serial No. 85730110**
(DATE OF FIRST USE IN COMMERCE:  At least by June 1, 2004)



Financial analysis and research services; Financial consultancy; Financial forecasting; Financial information; Financial risk management; Global investment research services.

(Madej Decl., ¶ 3) These marks will be referred to collectively herein as the "Kingsley Britannica Marks."

Kingsley operates an Internet Web site (www.britannicacapital.com) that occupies the first link on the first page on Google and other search engines for the most relevant BRITANNICA CAPITAL keyword. This website has occupied this prominent position on all major Internet search engines since at least as early as February 26, 2012. (Madej Decl., ¶ 6.) The Britannica Marks, or certain or them, are incorporated into many of the individual "pages" within this site, and are displayed on many of the branded services offered for sale online. (Madej Decl., ¶ 6.)

Kingsley has been using all of the Kingsley Britannica Marks in U.S. commerce for rendering its applied-for services under the marks since at least as early as the filing date of each of its trademark applications in the USPTO. (Madej Decl., ¶ 7.) Proof of use of the Kingsley Britannica Marks in commerce during such time is attached to the Declaration of Malgorzata Madej submitted in support of this Motion, and includes reports prepared for customers, marketing materials, invoices issued to customers, invoices evidencing printing of marketing materials, phone logs showing calls with current and prospective customers in the United States, and records reflecting customers, by location, that have downloaded the Britannica reports (the latter with the customer usernames and passwords redacted in the version filed with the Court for privacy reasons but produced to Plaintiffs' counsel unredacted). (Madej Decl., ¶ 8, Ex. B.)

**B.      Plaintiffs' Misappropriation and Misuse of the Kingsley Britannica Marks**

Plaintiffs allege to provide investment consulting and management services under the name BRITANNICA CAPITAL PARTNERS and/or BRITANNICA CAPITAL.[3] (Complaint, ¶¶ 14-15.) Plaintiffs concede that they have been providing investment related services under the BRITANNICA mark only since the firm's registration with FINRA *on June 21, 2013, and not beforehand*. (Complaint, ¶¶ 23, 25.) Their website (www.britannicapartners.com), however, has stated that BCP was "founded in July 2013."[4] (Madej Decl., ¶ 12, Ex. E.)

On July 18, 2012, Lewis filed a trademark application in the USPTO based on use in commerce under Section 1(a), Serial No. 85680188, for the mark BRITANNICA (the "BCP Britannica Mark") in connection with

> Investment services for domestic and international exchange traded funds; electronically traded funds analysis and services; financial asset management assistance and advising services; junk bond and private equity investment procurement services; raising seed and development capital for accredited investors and entities; advising on securities hedging and insurance; futures and currency indexing services; debt security services; financial services, namely, operation and management of individual retirement accounts, hedge funds, options, investment pools and other investment vehicles; corporate equity advising and services; advising on real estate investment trusts; advising on networking opportunities amongst investor groups; capital investment services; financial research and information services, namely, providing sourced macro updates on social, geo-political and economic trends and indicators; exempt investment procurement; master limited partnership and high-dividend yield procurement and advice; venture capital and angel investment facilitation.

---

[3] Upon information and belief, the Third-Party Defendants are officers and/or agents of BCP and conspired with Lewis and BCP and aided and abetted in their wrongdoing asserted herein. Kingsley is still in the process of obtaining service of process over the Third-Party Defendants, and this motion does not relate to Kingsley's claims against the Third-Party Defendants.

[4] After Kingsley filed its Counterclaims on November 2, 2015, referencing Plaintiffs' website, the contents of that website disappeared on or about December 4, 2015. During the discovery process, Plaintiffs have declined to produce any evidence related to that site. As of January 3, 2016, the website appeared in the archives of the Internet archive website archive.org. (Madej Decl., ¶ 15, Ex. H.) Thereafter, the history of that website disappeared from the archive.org website as well. (Madej Decl., ¶ 15, Ex. H.)

8

(Madej Decl., ¶ 17, Ex. J.)  Lewis listed at that time a date of first use in commerce of December 19, 2011.  (*Id.*)  On May 8, 2013, however, Lewis amended the filing basis of his application to "intent to use" under Section 1(b).  (Madej Decl., ¶18 Ex. K.)

Despite such allegation of use, neither Plaintiff was using the mark BRITANNICA in commerce at that time, and they certainly were not using the mark in commerce as of the date of filing of Kingsley's first application for registration of a Kingsley Britannica Mark.

Plaintiffs concede that they did not inquire with FINRA until on or about January 24, 2012, as to the availability of the Britannica name despite their understanding and belief that FINRA approval was required before they could begin using the mark in connection with the financial services they wished to offer.  (Complaint, ¶ 16.)

Because FINRA prohibits any marketing of any FINRA-regulated services until FINRA registration for these services is complete (Madej Decl., ¶ 26, Ex.Q), and Plaintiffs apparently believed their services to require FINRA registration (Complaint, ¶ 19), Plaintiffs could not lawfully have begun any marketing activities in connection with such mark sufficient to constitute use in commerce or analogous use under U.S. trademark law.  Indeed, Plaintiffs have produced no documents evidencing any marketing of their services under the BCP Britannica Marks before June 21, 2013.

On May 19, 2012 — prior to Plaintiffs' asserted first use date of June 21, 2013 — Plaintiff Lewis himself sent emails to Kingsley at two of its email addresses listed on Kingsley's Britannica website.  (Madej Decl., ¶ 24, Ex. P.)  He sent an email addressed to investorrelations@britannicacap.com, with the subject "FINRA," in which he stated:  "Please call me regading [sic] you [sic] company."  (*Id.*)  He also sent an email addressed to

9

info@britannicacap.com, with the subject "domain name use," in which he stated: "Please contact me regarding the use of the domain name britannicacap.com." (*Id.*)

On September 7, 2012, Kingsley's attorney wrote to Lewis demanding that Lewis cease use of the mark BRITANNICA and that Lewis abandon his pending application for registration of that mark. (Madej Decl., ¶ 20, Ex. M.) In that letter, Kingsley's attorney notified Lewis that Kingsley began using the trademark BRITANNICA at least as early as 2004 in the United States. (*Id.*)

After discussions, Kingsley reached an agreement in principle with Plaintiffs pursuant to which Plaintiffs agreed to terminate any use of the BRITANNICA name if Kingsley provided certain documentation regarding its use of the BRITANNICA mark. (Madej Decl., ¶ 21.) Kingsley provided this documentation. (Madej Decl., ¶ 22, Ex. N.) Plaintiffs, however, refused to honor the agreement, and proceeded with their plans to use Kingsley's BRITANNICA Mark. (Complaint, ¶ 23.)

Further, between October 17, 2012, and May 1, 2013, Lewis filed in the TTAB Notices of Opposition to Kingsley's trademark applications, Opposition Numbers 91207552, 91209887, 91210104, 91210136, and 91210563, alleging that Kingsley was aware of Lewis's intention to use the BCP Britannica Mark and that Kingsley manufactured specimens and dates of first use in an effort to achieve registration over Lewis. (Madej Decl., ¶ 23, Ex. O.) Lewis pled no technical trademark use, but legally concluded that he had made "analogous use" of the marks. (*Id.*)

Instead, contrary to Plaintiffs' allegations, it is Kingsley whose rights to the BRITANNICA family of marks in connection with financial services supersede those of Plaintiffs, and it is Plaintiffs who have infringed the rights of Kingsley.

10

Plaintiffs have sued Defendants for the following: 1) a declaratory judgment of trademark invalidity and cancellation; 2) federal trademark infringement; 3) prima facie tort under New York common law; and 4) civil conspiracy. (Complaint, ¶¶ 214-228.) Kingsley has countersued Plaintiffs for federal trademark infringement, false designation of origin, common-law unfair competition, violation of New York General Business Law §§ 349 and 350, trademark infringement under New York common law, false advertising under the Lanham Act, and contributory trademark infringement.[5] (Counterclaim (Doc. No. 30).) It is Plaintiffs' claims against Defendants that are the subject of the instant Motion.

### III.    ARGUMENT

#### A.    The Legal Standard

At any time after the pleadings are closed, but before trial commences, a party may move for judgment on the pleadings under Fed. R. Civ. P. 12(c). "A grant of a motion pursuant to Rule 12(c) is proper 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'" *Wells Fargo Bank Nat. Ass'n v. Davidson Kempner Capital Management LLC*, 32 F. Supp. 3d 436, 440-441 (S.D.N.Y. 2014) (quoting *Dargahi v. Honda Lease Trust*, 370 Fed. Appx. 172, 174 (2d Cir. 2010) (quoting *Burns Int'l Sec. Servs., Inc. v. International Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam)).)

"[T]he legal standards of review for motions to dismiss and motions for judgment on the pleadings 'are indistinguishable.'" *Id.* at 441 (quoting *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *DeMuria v. Hawkes*, 328 F.3d 704, 706 n.1 (2d Cir. 2003).) "On a motion to dismiss or for judgment on the pleadings [courts] 'must

---

[5] Defendants' claims for consumer fraud, frivolous conduct and vexatious litigation under New York General Business Law Section 130-1.1, and prima facie tort/civil conspiracy were dismissed by this Court's Order entered December 18, 2015 (Doc. No. 63).

accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" (Id. (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).) Courts are not bound to accept as true legal conclusions couched as factual allegations. (*Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).)

This Court in *Gucci America, Inc. v. Ashley Reed Trading, Inc.*, 2003 WL 22327162, *6 (S.D.N.Y. Oct. 10, 2003), summarized the standard of review for a motion for summary judgment filed under Rule 56 of the Federal Rules of Civil Procedure as follows:

> Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> ***
>
> "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.*, 901 F.2d 288, 290 (2d Cir. 1990) (quoting *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).)
>
> The substantive law governing the case will identify the facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." [*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).] The district court's role in a motion for summary judgment is not to resolve disputed issues of fact but to determine whether there are any genuine issues of material fact for trial. [*Anderson*, 477 U.S. at 249.] When viewing the evidence, the court must "assess the record in the light most favorable to the non-movant" and resolve all ambiguities and "draw all reasonable inferences in its favor." *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990).
>
> The movant bears the initial burden of informing the court of the basis for its motion and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." [*Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).]  If the movant meets this burden, the party opposing the motion must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 323-24.  Where the non-movant "propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment is inappropriate.  *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9-10 (2d Cir. 1983).

Conversely, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment.  *Casey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

**B.      Plaintiffs' Prima Facie Tort Claim Fails as a Matter of Law Because Plaintiffs' Complaint asserts that Defendants' Conduct Is Otherwise Unlawful.**

Plaintiffs assert a cause of action for "prima facie tort/civil conspiracy," alleging, as a prima facie tort, that Defendants registered the Kingsley Britannica Marks "intentionally and without justification or right, for the malicious purpose of interfering with Plaintiffs' business, further with the specific intention to harm Plaintiffs."  (Complaint, ¶¶ 224-228.)

Judgment should be granted on the pleadings in favor of Defendants on the prima facie tort aspect of their claim pursuant to Fed. R. Civ. P. 12(c) because, as this Court noted in dismissing Kingsley's counterclaim for prima facie tort against Plaintiffs, such a claim exists only when the malevolence that a plaintiff harbors against a defendant is the sole motive for defendant's conduct and that the defendant's conduct would otherwise be lawful.  (12/18/15 Hearing Transcript, p. 3 ("Transcript") (citing *Posner v. Lewis*, 18 N.Y. 3d 566, 571, n.1 (N.Y. 2012).)  As the court held in *Posner*:

> To state a legally cognizable claim for prima facie tort, a plaintiff must allege "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful."  In addition, there can be no recovery under this theory "unless malevolence is the sole motive for defendant's otherwise lawful act or, in [other words], unless defendant acts from disinterested malevolence."

*Posner*, 18 N.Y. 3d at 571, n.1 (internal citations omitted).

Plaintiffs' Complaint asserts that Defendants' conduct is unlawful on multiple grounds. Accordingly, the fourth prong of the test cannot be met, and judgment should be granted on the pleadings against Plaintiffs on their claim for prima facie tort.

**C.      Plaintiffs' Civil Conspiracy Claim Fails as a Matter of Law Because New York Does Not Recognize a Civil Cause of Action for Conspiracy.**

For the civil conspiracy portion of their claim, Plaintiffs allege:

> Defendants, jointly and severally, conspired and agreed to undertake the aforementioned acts in concert, and did in fact act in furtherance of the agreement by filing the fraudulent documents previously described, as well as additional documents in connection with the proceedings before the Trademark Trial and Appeal Board, all of which resulted in damages to Plaintiffs.

(Complaint, ¶ 226.)

Judgment should be granted on the pleadings in favor of Defendants on their civil conspiracy claim pursuant to Fed. R. Civ. P. 12(c) because, as this Court noted in dismissing Kingsley's claim for civil conspiracy against Plaintiffs, New York does not recognize a civil cause of action for conspiracy. (Transcript, p. 3 (citing *Oparaji v. Yablon*, 126 A.D.3d 443, 443, 6 N.Y. Supp. 3d 17 (N.Y. App. Div. 2015).)

**D.      Plaintiffs' Claim for Federal Trademark Infringement Fails as a Matter of Law Because It Is Undisputed That Defendants Made No Prior Use in Commerce or Analogous Use of the BCP Britannica Marks.**

Plaintiffs assert a claim of federal trademark infringement against Defendants under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Specifically, they allege that, to the extent Defendants have used the Kingsley Britannica Marks in commerce or otherwise, in connection with the provision of any goods and/or services, such use is junior to Plaintiffs' use of the BCP Britannica Marks, and that Plaintiffs have rights "senior" to any rights of Defendants in their respective marks. (Complaint, ¶¶ 219-223.)

14

The undisputed proof shows to the contrary: Plaintiffs admit that they did not begin using the BCP Britannica Marks in commerce until June 21, 2013, upon their registration with FINRA. (Complaint, ¶¶ 23, 25.) Plaintiffs have neither pled, nor have they produced proof of, any use in commerce, or use analogous to trademark use, before that date, much less before February 12, 2012, the date Kingsley filed its first U.S. trademark application for a Kingsley Britannica Mark. Kingsley, on the other hand, submits herewith under oath substantial proof of use of the Kingsley Britannica Marks in commerce as of February 12, 2012. Thus, it is, in fact, Kingsley's rights that are senior to those of Plaintiffs.

To prevail on a Lanham Act claim under Section 1125(a), a claimant must show that it has proprietary rights in a valid mark entitled to protection and that the Defendants' use of it is likely to cause confusion. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003); *Morningside Group Ltd. v. Morningside Capital Group*, 182 F.3d 133, 137 (2d Cir. 1999); *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 1320 (Fed. Cir. 1981). These proprietary rights may arise from a prior registration, prior trademark or service mark use, prior use as a trade name, prior use analogous to trademark or service mark use, or any other use sufficient to establish proprietary rights. *Id.*

**1. Plaintiffs Concede They Did Not Use the BCP Britannica Marks in Commerce before June 21, 2013.**

A mark is used in commerce on services only when *both* (1) it is used or displayed in the sale or advertising of services *and* (2) the services are rendered in commerce. *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009) (quoting 15 U.S.C. § 1127) (emphasis added). "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127; *see Aycock*, 560 F.3d at 1357. "[A]n applicant's preparations to use a mark in commerce are insufficient to

15

constitute use in commerce. Rather, the mark must be actually used in conjunction with the services described in the application for the mark. *Aycock*, 560 F.3d at 1360. "Without question, advertising or publicizing a service that the applicant intends to perform in the future will not support registration"; the advertising must instead "relate to an *existing service* which has already been offered to the public." *Id.* at 1358 (internal quotation marks and citations omitted) (emphasis added).

"There is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed.... [T]he right to a particular mark grows out of its use, not its mere adoption...." *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918). *See, e.g.*, *Buti v. Impressa Perosa, S.R.L.*, 139 F.3d 98, 100-03 (2d Cir. 1998) (promotion of Italian cafe in the United States, including distributing promotional materials offering free meals, did not constitute use in commerce where restaurant services were only provided in Italy and not in the United States); *International Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco*, 329 F.3d 359, 361-66 (4th Cir. 2003) (holding that, absent evidence of actual bookings made by a New York office for the Monte Carlo casino in Monaco, the activities of the New York office, including trade shows, advertising campaigns, partnering with charities, mail and telephone marketing, and soliciting media coverage, were insufficient to establish use in commerce of the "Casino de Monte Carlo" service mark); *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 759-63 (8th Cir. 2010) (holding no use in commerce where alleged infringer issued press release, made announcement, gave presentations, and constructed website with "under construction" notice where there was no evidence of any sale or transport of goods bearing the mark at issue).

The first user who continuously uses an inherently distinctive service mark in the relevant market is the senior user and has priority over any second comers. *Hydro Dynamics, Inc. v. George Putnam & Co.*, 811 F.2d 1470, 1472 (Fed. Cir. 1987); *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F. Supp. 866, 875 (E.D.N.Y. 1978).

> Unlike trademarks, service marks usually cannot be "affixed" or displayed in close connection with the services, so advertisements and solicitations are often used as evidence of use. However, it cannot be said that a service mark is actually used if it is displayed in an advertisement for services that are non-existent or will only hypothetically be available at some point in the future.

*American Express Co.,* 515 F.3d at 156 (holding that defendant made no actual use of mark because his services were wholly hypothetical when he sent his promotional materials) (internal citations omitted). Case law has repeatedly and unambiguously established that actual substantial sales, a solid market share, and bona fide trademark use are necessary for anyone to try to claim priority in the absence of a prior trademark registration. *See, e.g.*, *Natural Footwear, Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3d Cir. 1985); *Gold Club-SF, LLC v. Platinum SJ Enter.*, 2013 U.S. Dist. LEXIS 134379 (N.D. Cal. Sept. 18, 2013); *Nat'l Ass'n for Healthcare Communs. v. Cent. Ark. Area Agency on Aging, Inc.*, 257 F.3d 732 (8th Cir. 2001).

Plaintiffs concede that they did not begin using the Britannica marks in commerce until June 21, 2013. (Complaint, ¶¶ 23, 25.) Consistent with that concession, Plaintiffs amended their U.S. trademark application for their Britannica mark on May 8, 2013, from "use in commerce" based on an asserted date of first use in commerce of December 19, 2011, to "intent to use." (Madej Decl., ¶18, Ex. K.) Intent to use a mark, like a naked registration, establishes no rights at all. *See Hydro-Dynamics, Inc. v. George Putnam & Co.*, 811 F.2d 1470, 1472 (Fed. Cir. 1987).

In addition, Plaintiffs' own website identifies BCP as launching in July 2013 (Madej Decl., ¶ 12, Ex. E), stating: "Founded in July 2013, we are located in New York City …."

17

Further, the first trade report issued by the National Securities Clearing Corporation (regulated by the U.S. Securities and Exchange Commission) identifies Plaintiffs' first trade date under the mark as August 23, 2013. (Madej Decl., ¶ 16, Ex. I.) Consistent with all of the foregoing, Plaintiffs have produced not a single document showing proof of use of their mark in commerce prior to their asserted use-in-commerce date of June 21, 2013. Thus, there is no dispute that Plaintiffs were not using the Britannica marks in commerce before June 21, 2013.

> **2. Plaintiffs Cannot Lawfully Have Made Analogous Use of the BCP Britannica Marks in Commerce before Their FINRA Registration on June 21, 2013, Nor Have They Produced Proof of Prior Analogous Use.**

While use "analogous" to trademark use can suffice to establish priority for purposes of a trademark infringement claim, Plaintiffs have submitted no evidence of any analogous use, much less the "open and notorious" use required to establish analogous use sufficient to support a claim of trademark infringement. *See Am. Express Co.,* 515 F.3d at 161-62.

As the TTAB has stated, "Simply put, to claim priority based on analogous use, a party must show that its putative mark essentially functioned as a trademark — identifying the source of the goods in the mind of the consumer." *Cent. Garden & Pet Co. v. Doskocil Mfg. Co.*, 2013 TTAB LEXIS 439 (TTAB Aug. 16, 2013). In order to establish any rights in a mark, the mark must be used in such a way as to create a link in the minds of consumers between the service and the source of the service. *See ZAZU Designs v. L'Oreal S.A.,* 979 F.2d 499, 503 (7th Cir. Ill. 1992); *Giersch v. Scripps Networks Inc.,* 90 U.S.P.Q.2d 1020, 1022 (TTAB March 16, 2009). As the court held in *Old Swiss House, Inc. v. Anheuser–Busch, Inc.*, 569 F.2d 1130, 1133 (CCPA 1978), "public exposure of a mark that would be expected to have any significant impact on the purchasing public" is required to properly plead analogous use of a mark. Creation of a mark and preparatory activities related to a mark do not secure any rights in the mark, nor does de minimis

use, nor does less than de minimis use as is the situation here. *See McDonald's Corp. v. Burger King Corp.*, 107 F. Supp. 2d 787, 790 (E.D. Mich. 2000); *Future Domain Corp. v. Trantor Sys. Ltd.,* 1993 U.S. Dist. LEXIS 9177 (N.D. Cal. May 3, 1993)*; Windows User, Inc. v. Reed Business Pub., Ltd.* 795 F. Supp. at 108-09 (S.D.N.Y. 1992).

> At the very least analogous use must be use that is open and notorious…in other words, analogous use must be of such a nature and extent that the mark has become popularized in the public mind so that the relevant segment of the public identifies the marked goods with the mark's adopter.

*Am. Express Co.*, 515 F.3d at 161-62 (internal citations omitted) (finding no analogous use where defendant used his slogan only in communications with a few commercial actors within the credit card industry and there was no public exposure of the slogan). *See, e.g.*, *International Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC*, 470 F. Supp. 2d 365 (S.D.N.Y. 2007) (finding plaintiff's promotional and advertising activities insufficient to support a finding of analogous use where, although the company representative networked at monthly meetings of a trade group, the company was mentioned in one industry periodical, and it sent numerous holiday cards to health care industry contacts, it never paid for any print advertising and its publicity was not extensive enough); *see also Lucent Info. Mgmt. Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 325 (3d Cir. 1999) (denying prior ownership in part because plaintiff made only one sale in three months and failed to invest in public advertising or expand beyond the initial business set-up, despite having announced its business services in 50 promotional letters and thirteen sales presentations).

> The key is that any such pre-sales activity "must have been of such a nature and extent as to create an association in the mind of the consuming public between the mark and the services to be rendered." That is, any pre-sales publicity **must be directed at potential purchasers**, not just at persons such as potential investors, a phone company or suppliers who see the mark in the process of getting ready to do business.

McCarthy on Trademarks and Unfair Competition, § 16:14 (4th ed.) (emphasis added).

Here, Plaintiffs cannot establish any such prior analogous use. Plaintiffs have produced not a single document dated on or before February 12, 2012, with the exception of one document, a letter from Plaintiff Lewis to FINRA dated January 25, 2012, stating: "Please check and if available place on hold the name: Britannica Capital Partners LLC." That document is not directed to potential purchasers but instead the regulatory authority governing the services Plaintiffs were seeking to provide to potential purchasers in the future. Indeed, Plaintiffs' January 25, 2012, inquiry to FINRA was nothing but one of the first, if not the first, preliminary steps toward Plaintiffs' purported registration with FINRA. As Plaintiffs concede, registration with FINRA is a prerequisite to providing the services Plaintiffs sought to provide, and allegedly now provide, under the BCP Britannica Marks. In fact, the FINRA regulations require registration even to market such services (*see* Madej Decl., Ex. Q), so it is no surprise that Plaintiffs have not, and cannot, produce any documentation showing communications by Plaintiffs directed to potential purchasers in connection with their provision of services under the BCP Britannica Marks. Thus, Plaintiffs could not have made analogous use of the marks before their FINRA registration on June 21, 2013.

In *T.A.B. Sys. v. PacTel Teletrac* 77 F.3d 1372, 1375 (Fed. Cir. 1996), the court held that PacTel's use of a mark in various forms (which was much more real and substantial than the hollow activities alleged by Plaintiffs here) was "simply irrelevant to its analogous use priority rights, inasmuch as neither the vehicle tracking service itself nor PacTel's connection to it was advertised…." The court found that the defendant did not establish the necessary inference of public identification between the defendant's service and the mark, stating that the evidence on record did not permit one to infer that the defendant had reached "more than a negligible portion

20

of the relevant market" and that a few references to the mark over a one or two-month period were legally insufficient to support the defendant's analogous use claim. *Id.* at 1376.

Here, nothing in the record shows any communication by Plaintiffs to potential purchasers using the BCP Britannica Marks before February 12, 2012, or, indeed, before Plaintiffs' registration with FINRA on June 21, 2013, much less "of such a nature and extent as to create an association in the mind of the consuming public between the mark and the services to be rendered." *Selfway, Inc. v. Travelers Petroleum, Inc.*, 579 F.2d 75, 79 (CCPA 1978). Plaintiffs' allegations regarding purported analogous use are not supported by any facts but are nothing more than unsupported legal conclusions.

3. **Defendants Have Submitted Undisputed Proof of Kingsley's Use of the Kingsley Britannica Marks in Commerce at Least by February 12, 2012, and Even an Email from Plaintiff Lewis to Kingsley Recognizing the Existence of Kingsley's Britannica Website in May 2012.**

In contrast to Plaintiffs' lack of any proof of use, Defendants have produced a declaration under oath of Kingsley's officer Ms. Madej and more than 500 pages of documents establishing beyond dispute Kingsley's proof of use of the Britannica marks in commerce at least as of February 12, 2012. Such proof includes printouts of Kingsley's websites, financial reports prepared for clients, records of clients downloading such reports, marketing materials, phone records, and invoices all clearly and overwhelmingly demonstrating use of the marks as of such date. (Madej Decl., ¶ 8, Ex. B.)

Further, on May 19, 2012 — prior to Plaintiffs' asserted first use date of June 21, 2013 — Plaintiff Lewis himself sent emails to Kingsley at two of its email addresses listed on Kingsley's Britannica website (investorrelations@britannicacap.com and info@britannicacap.com), essentially acknowledging that Defendants were using a Kingsley Britannica Mark in commerce on their website at least by then. (Madej Decl., ¶ 24, Ex. P.) This vast and varied collection of

21

proof cannot reasonably be challenged, and Plaintiffs have produced no documents reflecting any use or analogous use of the BCP Britannica Marks in commerce on or as of that date.

The undisputed evidence simply does not support a claim of priority by Plaintiffs, either under a use-in-commerce theory or an analogous use theory. Accordingly, summary judgment should be granted in favor of Defendants on Plaintiffs' claim of trademark infringement.

**E.      Plaintiffs' Action for Declaratory Judgment of Trademark Invalidity Fails as a Matter of Law Because Plaintiffs Cannot Show an Injury to a Legally Protected Interest and Because Subject Matter Jurisdiction Is Lacking if Plaintiffs' Federal Lanham Act Claim Is Dismissed.**

Plaintiffs have also asserted a cause of action for Declaratory Judgment of Trademark Invalidity. (Complaint, ¶¶ 214-218.) They allege, specifically, that "Defendants have failed to use [the Kingsley Britannica Marks], in commerce and otherwise, in connection with the provision of any goods and/or services, sufficient to give rise to trademark rights therein." (Complaint, ¶ 215.) They further allege that "Defendants have sought to obtain federal registration of such trademarks through fraud and deceit, with the intention of deceiving the Trademark Office." (Complaint, ¶ 216.) They thus allege that they have been and continue to be damaged by Defendants' assertion of their trademark rights. (Complaint, ¶ 218.)

As set forth above, Plaintiffs cannot establish prior use in commerce or analogous use of the Britannica marks. Thus, they cannot have suffered damages as a result of Defendants' use and application for registration of the Kingsley Britannica Marks, as they claim, and cannot show an injury to a legally protected interest. Further, even if Plaintiffs had priority rights to challenge the validity of Kingsley's trademarks, contrary to Plaintiffs' conclusory assertions, the undisputed evidence establishes that Kingsley's trademark applications and the declarations and specimens submitted therewith were truthful, bona fide and accurate. (Madej Decl., ¶¶ 19-25.)

Plaintiffs' action for declaratory judgment, based on allegations of fraud, further fails because they do not meet the pleading threshold under the Federal Rules of Civil Procedure. In order to comply with the pleading requirements of Rule 8(a) (and the higher threshold under Rule 9(b) requiring the pleading of fraud with particularity), a complaint must allege well-pleaded factual allegations (and not invented, implausible allegations, legal conclusions or bare recitations of the elements of a cause of action) that if presumed true "plausibly give rise to an entitlement of relief." *Iqbal,* 556 U.S. at 664 (emphasis added). Plaintiffs' claims that Kingsley submitted fraudulent dates of first use and invalid specimens should be rejected as mere speculation.

For fraud claims to be sufficient, the statement and specimens in question (1) must be false; (2) must be made with knowledge that they are false; and (3) must be material to the examining attorney's decision to approve the application. *See Mister Leonard Inc. v. Jacques Leonard Couture Inc.,* 23 U.S.P.Q.2d 1064, 1065 (TTAB 1992). "There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Id.* Here, all elements fail. Plaintiffs' allegations that Kingsley filed fabricated specimens (Complaint, ¶¶ 34, 65, 104, 134, 165) are nothing more than speculation, inference or surmise, with no actual knowledge, and therefore should be dismissed. Plaintiffs have alleged no particular facts of intent by Kingsley to deceive the USPTO.

As Kingsley has attested under oath, all declarations and specimens that Kingsley submitted to the USPTO are truthful and bona fide. (Madej Decl., ¶ 4.) Kingsley's specimens are truthful proprietary marketing materials of Kingsley, have been used by Kingsley for marketing, advertising, sales, and rendering of its services under the mark, have been distributed by Kingsley, and demonstrate to the USPTO how the mark was and is being used in commerce by Kingsley. (Madej Decl., ¶ 5.) Speculative, defamatory and conclusory allegations that "no

such brochure was ever created nor distributed by Kingsley" (Complaint, ¶¶ 79, 117, 147, 179) are legally insufficient for pleading fraud; they are not grounded in knowledge but are a mere surmise. Plaintiffs have failed to specifically allege any particular facts that, if proven, would establish that these declarations or specimens were "fabricated."

Finally, if Plaintiffs' trademark infringement claim is dismissed, no continuing basis exists for subject matter jurisdiction over Plaintiffs' declaratory judgment action, as it is based only on alleged common-law rights to the Britannica marks, and thus must be dismissed on that ground alone. *See Universal Sewing Mach. Co. v. Standard Sewing Equipment Corp.,* 185 F. Supp. 257, 259-60 (S.D.N.Y. 1960).

**F.** **Plaintiffs Should Not Be Granted an Opportunity to Take Discovery for Purposes of Responding to This Motion Pursuant to Fed. R. Civ. P. 56(d) Because They Concede by Their Own Pleading That They Have No Superior Rights to the Subject Marks.**

Defendants anticipate that Plaintiffs will respond to Defendants' motion by seeking to complete discovery pursuant to Fed. R. Civ. P. 56(d) before responding to the merits of the motion. That Rule provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may…allow time to obtain affidavits or declarations or to take discovery…."

> This is not an empty rule that has been interpreted away by courts….It is well-settled in this Circuit that that "a party seeking additional discovery under former Rule 56(f) must file an affidavit in support of its request for discovery," and under former Rule 56(f), the affidavit must include: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." Id.

*Hughes v. U.S.*, 2014 WL 929837, *5 (S.D.N.Y. March 7, 2014).

> [A] party seeking to defeat or postpone an early summary judgment motion must do more than simply point to the absence of discovery. If a nonmovant gives the court no basis to conclude that discovery would yield information that would

24

create a genuine dispute as to material facts, then summary judgment may be appropriate even before discovery has been conducted.

*Negrete v. Citibank, N.A.*, 2016 WL 67788, *1 (S.D.N.Y. Jan. 5, 2016) (citations omitted).

Defendants submit that no further discovery will change the undisputed facts presented in this motion. Plaintiffs themselves concede that their first use date is June 21, 2013, and they have produced no evidence of analogous use. Plaintiff Lewis himself recognized the existence of Defendants' Britannica website as of May 2012, prior to Plaintiffs' use of the subject mark. For these reasons, Plaintiffs should be denied the opportunity to extend the standard response time to take additional discovery.

## IV. CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant judgment in their favor on the pleadings or, in the alternative, grant summary judgment in their favor because no material factual disputes exist.

DATED this 29th day of January, 2016.

Respectfully submitted,


__s/ Vladimir Tsirkin_____

Vladimir Tsirkin
Spektor & Tsirkin, P.C
40 Rector Street, Suite 1502
New York, NY 10006
vtsirkin@spetslaw.com

***Attorney for Defendants***

25

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically and, as such, was served on all counsel of record below via the electronic filing system on this 29th day of January, 2016.

Jeffrey Sonnabend
Sonnabendlaw
600 Prospect Avenue
Brooklyn, NY 11215

s/Vladimir Tsirkin/
Vladimir Tsirkin
Spektor & Tsirkin, P.C.